# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re:<br><br>F-SQUARED INVESTMENT<br>MANAGEMENT, LLC, *et al.*,[1]<br><br>            Debtors.<br><br>Craig Jalbert, in his Capacity as Trustee for F2 Liquidating Trust,<br><br>            Plaintiff,<br><br>    v.<br><br>Geordie McClelland<br><br>            Defendant. | Chapter 11<br><br>Case No. 15-11469 (LSS)<br><br><br><br><br>Adv. Pro. No. **REFER TO SUMMONS** |

## COMPLAINT TO AVOID AND RECOVER TRANSFERS

Plaintiff Craig Jalbert ("Plaintiff"), as trustee of the F2 Liquidating Trust (the "Liquidating Trust") of the estates of F-Squared Investment Management LLC and its subsidiaries (collectively, "F-Squared" or the "Debtors"), by and through undersigned counsel, files this complaint (the "Complaint") against Geordie McClelland (the "Defendant"), and alleges as follows:

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: F-Squared Investment Management, LLC (9247), F-Squared Investments, Inc. (0788), F-Squared Retirement Solutions, LLC (9247), F-Squared Alternative Investments, LLC (9247), F-Squared Solutions, LLC (9247), F-Squared Institutional Advisors, LLC (9247), F-Squared Capital, LLC (5257), AlphaSector LLS GP 1, LLC (3342), and Active Index Solutions, LLC (0788). The Debtors' address is 2221 Washington Street, Suite 201, Newton, Massachusetts 02462.

{00020803. }                          1

## JURISDICTION AND VENUE

1. This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157(a) and 1334(a), Article 10.5 of the *Joint Plan of Liquidation Under Chapter 11 of the Bankruptcy Code Proposed by the Debtors and the Official Committee of Unsecured Creditors* (the "Plan") [D.I 478], and the *Order Confirming Joint Plan of Liquidation Under Chapter 11 of the Bankruptcy Code Proposed by the Debtors and the Official Committee of Unsecured Creditors* (the "Confirmation Order") [D.I. 486]. This adversary proceeding is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue is proper in this Court pursuant to 5 U.S.C. § 703 and 28 U.S.C. § 1409(a).

2. Venue of this adversary proceeding is proper in this district pursuant to 28 U.S.C. § 1409(a).

3. The statutory and legal predicates for the relief requested by the Complaint are sections 544, 548, and 550 of the Bankruptcy Code and Rules 3007 and 7001 of the Federal Rules of Bankruptcy Procedure.

4. In accordance with Rule 7008-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware, Plaintiff hereby states that it consents to the entry of final orders or judgments by the Court if it is determined that the Court, absent the consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

## PARTIES

5. The Liquidating Trust is a liquidating bankruptcy trust established under the laws of Delaware pursuant to the Plan and the F-Squared Liquidation Trust Agreement filed as Exhibit A to the *Notice of Filing of Plan Supplement to Joint Plan of Liquidation Under Chapter*

*11 of the Bankruptcy Code Proposed by the Debtors and the Official Committee of Unsecured Creditors* [D.I. 457].

6.  Defendant Geordie McClelland is a natural person, residing at 8 Eustus Street, Cambridge, MA, 02140.  Defendant was an employee and/or a unitholder of F-Squared prior to F-Squared's bankruptcy.

## INTRODUCTION AND NATURE OF THE ACTION

7.  On July 8, 2015 (the "Petition Date"), the Debtors filed their respective voluntary Chapter 11 petitions in this Court.

8.  Prior to the Petition Date, and for some time thereafter, the Debtors were SEC registered investment management and research firms with corporate headquarters in Wellesley, Massachusetts and a research and development team located in New Jersey.  The Debtors' clients generally were investment advisors who sold the Debtors' investment portfolio model services to their own clients.

9.  Plaintiff has commenced this adversary proceeding to avoid and recover from Defendant or any other person or entity for whose benefit Transfers (later defined) were made pursuant to sections 544, 548 and 550 of the Bankruptcy Code any Transfers that may have been federal and/or state fraudulent conveyances. As described further below, the Transfers were all made to Defendant while the Debtors were insolvent and for which the Debtors did not receive reasonably equivalent (or any) value and are in the form of tax distributions paid to Defendant to cover the cost of Defendant's personal income taxes related to Defendant's equity interest in F-Squared and/or profit interests paid to Defendant on account of Defendant's equity interest in the Debtors (the "Dividends" or the "Transfers").  All such Transfers and each transferring Debtor are identified in **Exhibit A**.

**BACKGROUND**

A.   **The Debtors**

10.   As discussed more fully in the *Declaration of David N. Phelps in Support of Chapter 11 Petitions and First Day Motions* [D.I. 3], incorporated herein by reference, F-Squared was an investment management firm that served clients in the advisory, institutional, retail and retirement markets.  F-Squared was organized as a limited liability company that paid no income taxes of its own: rather, income taxes were paid by each individual or entity with an ownership interest in F-Squared, on a ratable basis.

B.   **The Debtors' Cash Management System**

11.   As of July 8, 2015 (the "Petition Date"), the Debtors utilized a cash management system (the "Cash Management System") for the collection, concentration, management, and disbursement of funds in the Debtors' business.[2]  The Cash Management System consisted of eighteen bank accounts comprised of several account types, including depository, concentration, payroll, accounts payable, and investment accounts, which were maintained at People's United Bank ("People's"), Folio Investments ("Folio"), and Charles Schwab & Co. Inc. ("Schwab", and together with People's and Folio, the "Banks") [D.I. 5].

12.   Among these bank accounts, disbursements to Defendant were made from two People's accounts ending in 0499 held by debtor F-Squared Investment Management, LLC, and 0504 held by debtor F-Squared Investments, Inc. (the "Disbursement Accounts").  The Disbursement Accounts were used to pay the debts incurred by the Debtors.  The Debtors engaged in intercompany transactions to maintain control over funds moving within the Debtors'

---

[2] More information on the cash management system can be found in the *Debtors' Motion (I) to Continue to Use Existing Cash Management System, Including Maintenance of Existing Investment Accounts, Bank Accounts, Checks and Business Forms, (II) for Waiver of Certain Requirements of the United States Trustee, and (III) for Extension of Time to Comply with Section 345 of the Bankruptcy Code.* [D.I. 5].

{00020803. }                                              4

corporate group. Further, the Debtors were able to accurately and carefully trace and account for all intercompany transactions. Upon information and belief, based upon the Debtors' intercompany transactions and the tracking and tracing of these transactions, the Debtor incurring each debt directed and caused the payments on each of its debts issuing from the Disbursement Accounts.

### C.     Circumstances Leading to Bankruptcy Filing

13.     F-Squared provided various index products to unaffiliated third parties, and also provided investment advisory services based on those index products to clients. In order to provide these index products and services, F-Squared created and licensed a series of specialty indexes (the "<u>AlphaSector Indexes</u>") covering a range of asset classes. The AlphaSector Indexes were based on sector rotation strategies that used quantitative models, programmed to measure the volatility and price movements of exchange-traded funds as criteria for inclusion and weighting in the indexes. As of June 30, 2014, there were approximately $28.5 billion invested by F-Squared clients pursuant to F-Squared's AlphaSector Indexes, including $13 billion in mutual fund assets sub-advised by F-Squared.

14.     The Securities and Exchange Commission (the "<u>SEC</u>") began an investigation of F-Squared in 2013. On December 22, 2014, F-Squared agreed to resolve an administrative cease-and-desist proceeding brought by the SEC pursuant to Section 203(k) of the Investment Advisers Act ("<u>IAA</u>") and Sections 9(b) and 9(f) of the Investment Company Act ("<u>ICA</u>"). Under the terms of the order enacting this resolution (the "<u>Transfer Order</u>"), the SEC charged, and F-Squared agreed to admit, that F-Squared's performance track record for the period between April 2001 and September 2008 was materially inflated, hypothetical and back-tested. The Transfer Order required F-Squared to pay $30 million in disgorgement to the SEC, as well

as a $5 million fine.

15.    On the same day, the SEC also commenced a civil action against Howard Present, who had been the CEO of F-Squared until his departure in November 2014.

16.    F-Squared's ability to make its payroll and pay its debts as they came due following the transfer of $35 million to the SEC was limited and depended on continued payment of asset management fees by clients. By 2014, a substantial majority of F-Squared's revenues, however, were on account of fees paid by F-Squared's clients to F-Squared to permit them to manage their client investments based on the AlphaSector Indexes. Thus, at all relevant times, F-Squared generated a great majority of its revenue by means of illegal activity almost certain to give rise, at some point, to massive liabilities on account of that activity, and so F-Squared was insolvent from the inception of its use of the AlphaSector Index strategy.

17.    Following entry of the Transfer Order, F-Squared's clients stopped using F-Squared's algorithms to manage their assets for several reasons, including:

- The negative publicity resulting from the Transfer Order;
- F-Squared's payment of $35 million to the SEC;
- F-Squared's admission that it had conducted business illegally for many years, including especially the AlphaSector Index, which F-Squared had been selling to substantially all of its clients for years;
- The realization of clients using the AlphaSector Index that they themselves might incur liability to their own clients if they continued doing business with F-Squared; and
- The SEC's commencement of investigative enforcement proceedings against several F-Squared clients relating to their business dealings with F-Squared.

18.    As a result, F-Squared's revenues dropped precipitously. For example, by March 31, 2015, four of its largest clients notified F-Squared that they were terminating their relationships, representing a loss of $4.3 billion, more than 25% of assets under management. Thereafter, F-Squared's clients continued to flee.

19.    The SEC also opened investigations into certain of the Debtors' clients for

securities fraud related to their use of the AlphaSector strategy, which gave further incentives for these clients to leave F-Squared. For example, in early May 2015, Virtus Investment Partners, Inc. ("Virtus") terminated its relationship with F-Squared, which had been a sub-advisor on several popular mutual funds from Virtus. Virtus was itself investigated by the SEC, and entered into a settlement with the SEC on November 16, 2015. In August 2016, the SEC announced penalties against another thirteen of F-Squared's clients, including AssetMark, Inc., BB&T Securities, and Ladenburg Thalmann Asset Management. See U.S. Sec. and Exch. Comm'n, Investment Advisers Paying Penalties for Advertising False Performance Claims (Aug. 25, 2016), https://www.sec.gov/news/pressrelease/2016-167.html.

20. In response to this substantial loss of business, in March 2015 the Debtors reduced their workforce by nearly 30% - from 162 to 117 employees. The work force reduction resulted in the incurrence of an additional approximately $1.3 million in severance costs. Moreover, in connection with the SEC's investigations, F-Squared incurred approximately $17.2 million in direct legal costs, plus millions more advanced to Directors and Officers pre-petition relating to the investigation, of which only $10 million of which was recovered from available insurance.

21. As a result of the Transfer Order, F-Squared was no longer a viable business and was no longer able to operate with its remaining capital, and on July 8, 2015 (the "Petition Date"), filed a voluntary petition for relief under Chapter 11 of the United States Bankruptcy Code (the "Bankruptcy Code") to sell its remaining assets and liquidate.

22. On August 25, 2015, this Court entered the *Order (A) Authorizing and Approving (1) The Sale of Substantially All of the Debtors' Assets Free and Clear of All Liens, Claims, Encumbrances and Other Interests; and (2) The Assumption and Assignment of Certain*

*Executory Contracts and Unexpired Leases in Connection Therewith; and (B) Granting Related Relief* [D.I 192] (the "Sale Order"), pursuant to which the Debtors sold their assets (the "Sale") to Broadmeadow Capital, LLC (the "Purchaser").

23. On October 28, 2015, F-Squared and the official committee of unsecured creditors appointed in the case by the Office of the United States Trustee filed a joint plan of reorganization (the "Plan"), which was confirmed by the Bankruptcy Court on January 14, 2016 and soon thereafter became effective.

24. Pursuant to the Plan, the Trust was established for the purpose of, among other things, pursuing all causes of action not released, compromised and/or settled under the Terms of the Plan (the "Retained Causes of Action"). See Plan Arts. I(A)(73), IV(B)(1).

25. The Trustee was given power under the Plan to "prosecute, settle, abandon or compromise the Retained Causes of Action." Plan Art. IV(C)

### D. The Debtors Pay Defendant Certain Dividends

26. Defendant also owned equity in F-Squared.

27. During the two years prior to the Petition Date, F-Squared distributed certain Dividends to Defendant in the amount set forth in **Exhibit A** to pay Defendant's personal income taxes related to Defendant's equity interest in F-Squared and/or as profit interests in F-Squared.

28. F-Squared received no value in consideration for the Dividends, and were not obliged to pay the Dividends by the Debtors' LLC agreement or any other document.

## CLAIMS FOR RELIEF

### COUNT I

### Constructive Fraudulent Transfer (11 U.S.C. § 548)

29.	Plaintiff incorporates all preceding paragraphs as if fully re-alleged herein.

30.	The Transfers constituted an interest of one or more of the Debtors in property.

31.	The Debtors received less than reasonably equivalent value in exchange for the Transfers.

32.	The Debtors: (i) were insolvent on the date that the Transfers was made, or became insolvent as a result of the Transfers; (ii) were engaged in a business or a transaction, or where about to engage in a business or transaction, for which any property remaining with the Debtors was an unreasonably small capital; or (iii) intended to incur, or believed that they would incur, debts that would be beyond the Debtors' ability to pay as such debts matured.

33.	As a result of the foregoing, Plaintiff demands an entry of judgment avoiding the Transfers pursuant to Section 548 of the Bankruptcy Code.

### COUNT II

### 11 U.S.C. § 544, MASS. GEN. LAWS 109A § 5, Delaware Uniform Fraudulent Transfer Act § 1304(a)(1)

34.	Plaintiff incorporates all preceding paragraphs as if fully re-alleged herein.

35.	Pursuant to § 544(b) of the Bankruptcy Code, Plaintiff may avoid any transfer of an interest of the Debtor in property that is voidable under applicable state law.

36.	The Transfers were made within four years of the Petition Date. The Transfers are more fully described in **Exhibit A** hereto.

37.	The Debtors received less than reasonably equivalent value in exchange for the Transfers.

38. At the time of the Transfers, the Debtors: (i) were engaged or were about to engage in a business or a transaction for which its remaining assets were unreasonably small in relation to the business or transaction or (ii) intended to incur, or believed or reasonably should have believed that the debtor would incur, debts beyond the debtor's ability to pay as they became due.

39. As a result of the foregoing, Plaintiff demands entry of judgment avoiding the transfer under 11 U.S.C. § 544(b)(1) and applicable state law; provided, however, it is Plaintiff's intent to avoid and recover any Transfer only once, either pursuant to this Count III or Count II.

## COUNT III

## (11 U.S.C. § 550)

40. Plaintiff incorporates all preceding paragraphs as if fully re-alleged herein.

41. Defendant was the original transferee of the Transfers, or the entity for whose benefit the Transfer was made, or the immediate or mediate transferee of the original transferee receiving such Transfer.

42. Plaintiff is entitled to recover the value of the Transfers pursuant to Section 550(a) of the Bankruptcy Code, plus interest thereon to the date of payment and the costs of this action.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court enter a judgment in its favor and against Defendant: (a) awarding Plaintiff the amount of the Transfers; (b) awarding Plaintiff prejudgment interest at the legally allowed applicable rate; (c) awarding Plaintiff its costs, fees, and expenses associated with the prosecution of this action; and (d) granting such other and further relief as is just and proper.

Dated: July 7, 2017
      Wilmington, Delaware

**THE ROSNER LAW GROUP LLC**

*/s/ Frederick B. Rosner*
Frederick B. Rosner, Esq. (DE 3995)
Scott J. Leonhardt, Esq. (DE 4885)
Jason A. Gibson, Esq. (DE 6091)
824 N. Market Street, Suite 810
Wilmington, DE 19801
Telephone: (302) 777-1111
rosner@teamrosner.com
leonhardt@teamrosner.com
gibson@teamrosner.com

   *-and-*

**BROWN RUDNICK LLP**

William R. Baldiga, Esq.
Seven Times Square
New York, NY 10036
Telephone: (212) 209-4800
wbaldiga@brownrudnick.com

   *-and-*

Sunni P. Beville, Esq.
Sharon I. Dwoskin, Esq.
One Financial Center
Boston, MA 02111
Telephone: (617) 856-8200
sbeville@brownrudnick.com
sdwoskin@brownrudnick.com

62815898 v1